[No. 11869-0-III. Division Three. November 10, 1992.]

*In the Matter of the Personal Restraint of* DONALD MERLYN SNOOK, *Petitioner.*

*William O. McCarthy,* for petitioner.

*James L. Nagle, Prosecuting Attorney,* and *Jerry A. Votendahl, Deputy,* for respondent.

SHIELDS, C.J. — As a result of a 1977 jury conviction for aggravated first degree murder, Donald Merlyn Snook was

sentenced to death. Former RCW 9A.32.046.[1] An alternative sentence of life without the possibility of parole was imposed pursuant to former RCW 9A.32.047.[2] The mandatory death penalty for aggravated murder under former RCW 9A.32.046 was declared unconstitutional in 1979. *State v. Green*, 91 Wn.2d 431, 446-47, 588 P.2d 1370 (1979), *rev'd on other grounds on reconsideration*, 94 Wn.2d 216, 616 P.2d 628 (1980). Mr. Snook appealed his death sentence to the Washington Supreme Court, which in 1979 converted his sentence to life without the possibility of parole. Mr. Snook filed petitions for relief from personal restraint with this court in 1980 and in 1988. He currently seeks relief from personal restraint, arguing his sentence of life without the possibility of parole is unconstitutional.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

While incarcerated in the Washington State Penitentiary for taking a motor vehicle without permission, Mr. Snook murdered two inmates. On September 10, 1975, he was charged with murder in the first degree for the death of one inmate on September 9, 1975, and convicted as charged. On February 15, 1977, he was charged with aggravated murder

---

[1]Former RCW 9A.32.046 provided, in part:

"A person found guilty of aggravated murder in the first degree . . . shall be punished by the mandatory sentence of death." Laws of 1975, 2d Ex. Sess., ch. 9, § 2.

[2]Former RCW 9A.32.047 provided:

"In the event that the governor commutes a death sentence or in the event that the death penalty is held to be unconstitutional by the United States supreme court or the supreme court of the state of Washington in any of the circumstances specified in section 1 of this act [RCW 9A.32.045], the penalty for aggravated murder in the first degree in those circumstances shall be imprisonment in the state penitentiary for life. A person sentenced to life imprisonment under this section shall not have that sentence suspended, deferred, or commuted by any judicial officer, and the board of prison terms and paroles shall never parole a prisoner or reduce the period of confinement nor release the convicted person as a result of any automatic good time calculation nor shall the department of social and health services permit the convicted person to participate in any work release or furlough program." Laws of 1975, 2d Ex. Sess., ch. 9, § 3.

in the first degree for the death of a second inmate on January 8, 1977. Mr. Snook's conviction of murder in the first degree is not relevant here.[3]

Before Mr. Snook's trial on aggravated murder began in July 1977, former RCW 9A.32.046 and .047 were amended by Laws of 1977, 1st Ex. Sess., ch. 206, §§ 5, 6, effective June 10, 1977. He was found guilty by a jury on July 21. The trial judge imposed a mandatory death sentence and an alternative sentence of life without the possibility of parole pursuant to former RCW 9A.32.046 and .047, which were in effect at the time of the offense.

Mr. Snook appealed. The Supreme Court accepted certification on June 12, 1978. The Supreme Court commissioner ruled on June 11, 1979, that (1) Mr. Snook's death sentence was nullified by *Green*; (2) resentencing was not necessary because an alternative sentence of life without possibility of parole had been imposed; and (3) the case should be transferred back to the Court of Appeals, Division Three. Mr. Snook requested on June 16, 1979, that he be allowed to withdraw his appeal because of his fear the death sentence would again be imposed. On August 23, a Division Three court commissioner granted Mr. Snook's motion to withdraw the appeal, ruled the alternate sentence of life imprisonment without possibility of parole "stands as the judgment & sentence", and terminated review.

In a personal restraint petition, filed with this court on March 3, 1980, Mr. Snook challenged his conviction of aggravated first degree murder. He argued he was denied his right to a speedy trial, the right to participate in his defense, the right to receive effective assistance of counsel and to present witnesses. The petition was denied.

On November 24, 1980, Mr. Snook petitioned the Supreme Court for discretionary review, arguing his sentence of life without possibility of parole was illegal because he was not granted a 2-phase aggravated murder trial as provided in the

---

[3]That event took place before the adoption of the death penalty statute at issue here. On November 4, 1975, the State adopted Initiative Measure 316, Laws of 1975, 2d Ex. Sess., ch. 9, codified as former RCW 9A.32.

1977 act, which added former RCW 10.94 and amended former RCW 9A.32.046 and .047. He also asserted his life sentences should run concurrently. The petition was denied January 21, 1981.

On October 10, 1988, Mr. Snook again petitioned this court for relief from personal restraint. The court denied the petition on February 21, 1989, stating the issue of the 2-phase trial was presented in Mr. Snook's 1980 petition for discretionary review to the Washington State Supreme Court which was denied.[4]

## ISSUES

On September 26, 1991, Mr. Snook filed this personal restraint petition, alleging his sentence of life without parole under former RCW 9A.32.045[5] is unconstitutional. He contends his conviction by a jury and his sentence to life imprisonment, without possibility of parole, is a denial of due process and the equal protection of the law. He relies on cases in which pleas of guilty to first degree murder, *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980); *State v. Frampton*, 95 Wn.2d 469, 627 P.2d 922 (1981), and a plea of guilty to aggravated first degree murder, *In re Moore*, 116 Wn.2d 30, 803 P.2d 300 (1991), subjected the defendants to only a sentence of life imprisonment, with possibility of parole. *See also Robtoy v. Kincheloe*, 871 F.2d 1478 (9th Cir. 1989), *cert. denied*, 494 U.S. 1031 (1990).

An initial determination must be made whether to consider this third personal restraint petition.

■ "No more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause

---

[4]This court also stated Mr. Snook's second issue concerning a consecutive/concurrent sentence was without merit.

[5]Former RCW 9A.32.045 provided, in part:
"A person is guilty of aggravated murder in the first degree when he commits murder in the first degree as defined in RCW 9A.32.030 under or accompanied by any of the following circumstances:
" . . . .
"(2) At the time of the act resulting in the death, the defendant was serving a term of imprisonment in a state correctional institution." Laws of 1975, 2d Ex. Sess., ch. 9, § 1.

shown." RAP 16.4(d); *In re Jeffries*, 114 Wn.2d 485, 487-88, 789 P.2d 731 (1990). A successive petition seeks " 'similar relief' " if it raises matters which have been previously heard and determined on the merits. *Jeffries*, at 488. A matter has been previously heard and determined if:

> (1) [T]he same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*In re Taylor*, 105 Wn.2d 683, 687, 717 P.2d 755 (1986) (quoting *In re Haverty*, 101 Wn.2d 498, 503, 681 P.2d 835 (1984)).

## Discussion

Mr. Snook has challenged his sentence under the 1975 act in prior petitions to the Supreme Court and this court on the ground he did not have a 2-phase trial as required by the amendatory 1977 act, thus preventing him from presenting mitigating circumstances. He now petitions on the basis of decisions interpreting the 1977 act. This petition, as did his earlier petitions, invokes the 1977 act, not the 1975 act under which Mr. Snook was convicted. It need not be considered unless good cause is shown.

Under the 1977 act, if a request for the death penalty had been filed by the prosecution in a first degree murder case, following entry of a verdict of guilty, "the same trial jury" was to be reconvened to determine whether aggravating or mitigating circumstances existed. Laws of 1977, 1st Ex. Sess., ch. 206, § 2.[6] Accordingly, the maximum penalty on a plea of guilty to first degree murder was life imprisonment with a possibility of parole. *Robtoy*, at 1480-81.

---

[6]That statute, codified as former RCW 10.94.020, provided, in part:

"(2) If the prosecution has filed a request for the death penalty in accordance with RCW 10.94.010, and the trial jury returns a verdict of murder in the first degree under RCW 9A.32.030(1)(a), then, at such time as the verdict is returned, the trial judge shall reconvene the same trial jury to determine in a separate special sentencing proceeding whether there are one or more aggravating circumstances and whether there are mitigating circumstances sufficient to merit leniency, . . . .".

Mr. Snook relies on the principle adopted in *Frampton*, at 480, "that if the severity of the punishment is dependent upon the way guilt is determined — *e.g.*, by a plea of guilty or by a jury trial — this imposes an impermissible burden on the exercise of constitutional rights." He argues the principle applies to make his sentence after a jury trial of life imprisonment without possibility of parole unconstitutional. He is mistaken; his reliance on cases interpreting the 1977 act is misplaced because his sentence was imposed pursuant to former RCW 9A.32.046, .047 (Laws of 1975, 2d Ex. Sess., ch. 9, §§ 2, 3).

*Martin* held a defendant had a right to plead guilty to first degree murder and be sentenced to life imprisonment with the possibility of parole. The court rejected the State's contention it had a right under Laws of 1977, 1st Ex. Sess., ch. 206, §§ 1, 2, codified as former RCW 10.94.010, .020, to file a written notice of a special sentencing proceeding to determine whether the death penalty should be imposed after a guilty plea. The court reasoned the Legislature did not anticipate the possibility an accused might plead guilty to a charge of first degree murder and failed to provide for that eventuality because after a guilty plea "the same trial jury" could not be "reconvened". *Martin*, at 8.[7] This legislative oversight was corrected by Laws of 1981, ch. 138, § 5, codified as RCW 10.95.050.

*Moore*, at 37-38, held a defendant had a right to plead guilty to aggravated first degree murder and be sentenced to life with the possibility of parole. The court, at page 36 n.3, rejected the Attorney General's contention as amicus curiae that a plea of guilty to aggravated first degree murder stipulated to the aggravating circumstances, because those circumstances were to be decided at the penalty phase of the case under the 1977 act. That legislative scheme was also

---

[7]*Robtoy*, at 1481, held a sentence of life without parole for aggravated first degree murder, based on the laws of 1977, was an unconstitutional penalty on assertion of the right to a jury trial because the defendant could not have received that sentence if he had pleaded guilty. Mr. Snook's reliance on *Robtoy* is likewise misplaced.

changed by Laws of 1981, ch. 138, § 2, codified as RCW 10.95.020, which provides the aggravating circumstances are determined at the trial phase and the mitigating circumstances are determined at the penalty phase.

■ The 1981 act operates in essentially the same manner as the 1975 act: the aggravating circumstances in each are an element of the offense. The 1975 act, under which Mr. Snook was sentenced, applied to those "found guilty", former RCW 9A.32.046, of aggravated first degree murder, former RCW 9A.32.045. Irrespective of whether Mr. Snook was found guilty by a jury or on a plea of guilty, his sentence would have been life without the possibility of parole, pursuant to the alternative sentencing provision of the 1975 act. Only the mandatory imposition of the death penalty in the 1975 version of former RCW 9A.32.046 was held unconstitutional. *State v. Green*, 91 Wn.2d 431, 588 P.2d 1370 (1979), *rev'd on other grounds on reconsideration*, 94 Wn.2d 216, 616 P.2d 628 (1980). Contrary to Mr. Snook's contention, the alternative sentence of life without possibility of parole provided for by former RCW 9A.32.047 is constitutional. *State v. Forrester*, 21 Wn. App. 855, 869, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979).[8] Mr. Snook's petition has no basis in law.

■ Finally, Mr. Snook contends that life without the possibility of parole constitutes cruel and unusual punishment in violation of rights granted him by the eighth amendment to the United States Constitution. This argument has previously been rejected; life without the possibility of parole is not cruel and unusual punishment. *Forrester*, at 870.

The petition is dismissed with prejudice.

MUNSON and SWEENEY, JJ., concur.

---

[8] As to the 1977 act, *see also State v. Frampton, supra* at 529 (Dimmick, J., concurring in part, dissenting in part).