**Donald M. SNOOK, Petitioner–
Appellee–Cross–Appellant,**

v.

**Tana WOOD, Superintendent, Washington State Penitentiary, Respondent–
Appellant–Cross–Appellee.**

**Nos. 95–36089, 95–36150.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1996.

Decided July 12, 1996.

As Amended on Denial of Rehearing
and Suggestion for Rehearing En Banc
Sept. 4, 1996.*

---

\* Judges Browning and T.G. Nelson vote to reject the suggestion for rehearing en banc and Judge

Wright so recommends.

John J. Samson, Assistant Attorney General, Olympia, Washington, for respondent-appellant-cross-appellee.

George A. Critchlow and David Parker, University Legal Assistance, Spokane, Washington, for petitioner-appellee-cross-appellant.

Before: BROWNING, WRIGHT and T.G. NELSON, Circuit Judges.

Opinion by Judge T.G. NELSON; Special Concurrence by Judge WRIGHT.

T.G. NELSON, Circuit Judge:

## OVERVIEW

Tana Wood, Superintendent, Washington State Penitentiary ("State"), appeals the district court's partial grant of habeas corpus relief to Washington State prisoner Donald M. Snook ("Snook"), who challenges his 1977 murder conviction and life sentence.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2243, and we affirm.

## FACTS AND PROCEDURAL HISTORY

In 1975, while incarcerated for taking a motor vehicle without permission, Snook was charged with first-degree murder of a fellow inmate. A jury convicted Snook, and he was sentenced to life imprisonment with a minimum sentence of twenty years.

While serving his sentence, in January 1977, Snook allegedly killed another inmate. In February 1977, Snook was charged with first-degree aggravated murder under Washington's 1975 mandatory death penalty statute, RCW 9A.32.046.

In June 1977, prior to Snook's second murder trial, the Governor of Washington signed into law Substituted House Bill No. 615, effective immediately, which changed the procedures for imposition of the death penalty for aggravated murder under the 1975 statute. This new law did not apply retroactively.

Because Snook committed his crime under the 1975 statute, and because that statute had not been declared invalid, the trial court tried, convicted and sentenced Snook under the 1975 mandatory death penalty statute. Consequently, Snook was sentenced to death. However, pursuant to the savings clause within the 1975 statute, the court also imposed an alternative sentence of life imprisonment without the possibility of parole, which was to become effective in the event Snook's death sentence was held unconstitutional.

Snook immediately appealed his death sentence. Donald Schacht and John Knowlton, Snook's trial attorneys, were appointed as counsel for Snook on appeal. In November of 1977, Schacht withdrew as Snook's counsel because of a possible conflict of interest. Soon thereafter, Knowlton also withdrew for the same reason.

Upon the discharge of Schacht and Knowlton, the Walla Walla Superior Court appointed Madison Jones to represent Snook. A short time later, Snook discharged Jones.

On September 13, 1978, Snook moved in the superior court to compel direct access to the prison law library. Snook's motion and supporting documents stated that Snook was appealing pro se. Snook's supporting affidavit stated:

That on August 29, 1978, Appellant requested that his Court appointed Attorney withdraw from his appeal, this attorney, Madison R. Jones. That on August 30, 1978, that Walla Walla Superior Court Judge Honorable James B. Mitchell,

signed the above order allowing Appellant's attorney to withdraw from his appeal. By so doing Appellant is now on appeal PRO SE.

Snook further stated, "Appellant has chosen to represent himself on his appeal as one of his rights by both the State of Washington's Constitution and the Constitution of the United States of America.... Appellant is definetly [sic] competent enogh [sic] to represent himself as he has done work as a Jailhouse Lawyer for a number of years."

In a letter to the Clerk of the Washington Supreme Court, dated September 17, 1978, Snook informed the court that he had dismissed his attorney, Jones, and that he intended to represent himself. The letter stated:

As of 8/30/78 I became my own PRO SE counsel. Mr. Jones was dismissed as my counsel in the above-entitled cause at my request on 8/30/78 in an ORDER signed by Walla Walla Superior Court Judge James B. Mitchell.

This information I ask please be noted and that in the future that I am recognized as my own counsel on my appeal in which I'll file Appellant, PRO SE.

The letter further stated, "I believe by law I am able to represent myself if I so desire and in this case that is what I want." Snook admits that he typed this letter himself.

On October 11, 1978, Gust Haugen, the Administrator of the Walla Walla–Columbia County Legal Defense Association, filed an affidavit based upon his telephone conversations with Snook. In the affidavit, Haugen stated, "Snook informed your affiant that he believes that he is fully qualified to act as his own attorney in matters relating to his appeal from a conviction of murder in the first degree."

On October 12, 1978, Snook signed an affidavit indicating that he desired to represent himself:

That your affiant dismissed Madison R. Jones as his attorney in your affiant's appeals and desires to represent himself in any further appeal proceeding. That your affiant is aware that pursuant to Criminal Rules for Superior Court CrR 3.1(b)(2)

your affiant is entitled to counsel for purposes of appeal. That your affiant hereby knowingly, intelligently and voluntarily waives his right to have appointed counsel representing him for purposes of appellate review in the above cause and henceforth will represent himself in all matters relating to his appeal.

On October 30, 1978, Stephen E. Llewellyn, the attorney for the Walla Walla–Columbia County Legal Defense Association, wrote a letter to the Clerk of the Washington Supreme Court. In his letter, Llewellyn wrote that when he provided the name of James Barrett to represent Snook in his appeal, Snook informed him that "he [did] not want appointed counsel to represent him for purposes of appeal and that he would resist any attempt to appoint counsel for him."

It does not appear that there was ever a state court hearing on the issue of Snook's request to waive his right to be represented by counsel on appeal.

On January 5, 1979, the Washington Supreme Court ruled the mandatory death penalty provision of the 1975 statute unconstitutional. *State v. Green,* 91 Wash.2d 431, 588 P.2d 1370 (1979). On January 10, 1979, Snook filed a pro se motion with the Washington Supreme Court to vacate his sentence.

In June 1979, the Washington Supreme Court vacated Snook's death sentence. The court, however, determined that resentencing was not necessary because an alternative sentence of life imprisonment without the possibility of parole had already been imposed. *In re Snook,* 67 Wash.App. 714, 840 P.2d 207 (1992). The court transferred Snook's appeal to the Washington Court of Appeals for further proceedings. Snook then voluntarily withdrew his direct appeal because he feared that the death sentence could be reimposed under the rule set forth in *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

Between 1980 and the filing of the present petition in the district court in 1993, Snook filed four personal restraint petitions in state court and two habeas petitions in federal court. All were denied or dismissed.

In September 1993, Snook filed the present habeas corpus petition, and later, the district court appointed counsel to assist Snook. Through counsel, Snook filed a memorandum of law in support of his petition for habeas corpus, raising two issues: (1) The trial court incorrectly sentenced Snook under the 1975 statute; and (2) Snook did not knowingly, intelligently, and voluntarily waive his right to counsel or assert his right to self representation on appeal.

By an Order filed on April 20, 1995, the district court found that Snook was sentenced to death without the required constitutional safeguards. Nonetheless, the court held that because the Washington Supreme Court vacated Snook's death sentence and reduced the sentence to life imprisonment without the possibility of parole under the saving clause of the 1975 statute, Snook's sentence was constitutional.

With regard to the waiver of counsel on appeal issue, the district court held an evidentiary hearing to determine whether Snook knowingly, intelligently, and voluntarily waived his right to counsel on direct appeal. On October 6, 1995, the district court issued a written order stating:

> [U]nder the applicable law, there has been no showing at all of a knowing, voluntary, and intelligent waiver of Petitioner's right to the assistance of counsel on appeal of his aggravated murder conviction. No one ever talked to Snook, a 24 or 25 year-old man, with a limited education, with psychological problems, and who had been sentenced to death, about the dangers and potential consequences of self-representation. Snook did not have the background and experience in legal matters in 1977–80 to represent himself in a capital appeal of all appealable issues in this case.

The court concluded that Snook had "been denied his due process rights under the United States Constitution by being denied his right to effective assistance of counsel in appealing his capital first-degree aggravated murder conviction to the Washington Court of Appeals." Thus, the court granted in part Snook's petition for writ of habeas corpus, ordering the Washington courts to reinstate Snook's right to appeal with the assistance of counsel.

## ANALYSIS

### Standard of Review

■ The decision whether to grant or deny a petition for habeas corpus is reviewed *de novo*. *Calderon v. Prunty,* 59 F.3d 1005, 1008 (9th Cir.1995). The district court's findings of fact are reviewed under the clearly erroneous standard. *Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988).

■ State court judgments of conviction and sentence carry a presumption of finality and legality. *McKenzie v. McCormick,* 27 F.3d 1415, 1418 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 916, 130 L.Ed.2d 797 (1995). However, the presumption of correctness does not attach to a state court's resolution of mixed questions of fact and law, *Powell v. Gomez,* 33 F.3d 39, 41 (9th Cir.1994). It is the petitioner's burden to prove his custody is in violation of the Constitution, laws or treaties of the United States. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

### Sentencing by the Trial Court

In his cross-appeal, Snook argues that the trial judge failed to rule which sentencing law would apply until after the trial. In order to understand Snook's argument, we must first review the state of the mandatory death penalty in Washington at the time Snook committed his second murder and at the time he was sentenced.

In 1977, when Snook committed his second murder, Washington law provided that any person who commits murder in the first degree is guilty of aggravated murder in the first degree if "[a]t the time of the act resulting in death the defendant was serving a term of imprisonment in a state correctional institution." Laws of Washington 1975–1976, 2d ex. sess., ch. 9, § 1 (former RCW 9A.32.045(2)). Further, under Washington law at that time, any person convicted of aggravated murder in the first degree was given a mandatory death sentence. *Id.* at § 2 (former RCW 9A.32.046). The 1975 law

also included a savings clause which provided that in the event the death penalty was held unconstitutional, the sentence shall be life imprisonment without the possibility of parole. *Id.* at § 3 (former RCW 9A.32.047). Finally, the 1975 statute contained a severability clause.

In 1976, the United States Supreme Court struck down a mandatory death penalty scheme in *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Due to the similarities between Washington's mandatory death statute and the one struck down in *Woodson*, in July 1977, after Snook's crime, but prior to Snook's trial, the Washington Legislature enacted an amendment (1977 amendment) to cure the perceived constitutional defects of the 1975 statute, to be effective immediately. However, the 1977 amendment did not declare that it was to apply retroactively or that the 1975 statute was repealed.

Among other things, the 1977 amendment provided an opportunity for the jury to find aggravating circumstances and any mitigating circumstances which might merit leniency. Under the 1977 amendment, the jury had the option, if it found aggravating circumstances but it also found mitigating circumstances which might merit leniency, to impose life imprisonment without the possibility of parole rather than the death sentence. However, in convictions where the jury did not find aggravating circumstances, where the defendant pled guilty, or where no death penalty was sought, the sentence was life imprisonment with the possibility of parole.

It was not until 1979 that the Washington Supreme Court held the mandatory death penalty provisions of the 1975 statute unconstitutional. *State v. Green*, 91 Wash.2d 431, 588 P.2d 1370 (1979). Further, in 1981, the Washington Supreme Court held the death penalty provisions of the 1977 amendment also unconstitutional. *State v. Frampton*, 95 Wash.2d 469, 627 P.2d 922 (1981). The court ruled the death penalty provisions of the

1977 amendment unconstitutional because under the terms of that amendment, only those defendants who chose to go to trial could be sentenced to death or life without the possibility of parole. If a defendant pleaded guilty, he was sentenced to life with the possibility of parole. Consequently, the court held the death penalty portion of the 1977 amendment unconstitutional, but upheld the portion of the statute which allowed the sentence of life imprisonment without the possibility of parole.

In 1989, in *Robtoy v. Kincheloe*, 871 F.2d 1478 (9th Cir.1989), *cert. denied sub. nom., Robtoy v. Callahan*, 494 U.S. 1031, 110 S.Ct. 1483, 108 L.Ed.2d 619 (1990), we rejected that portion of *Frampton* which upheld the constitutionality of the life sentence without the possibility of parole. Under the *Robtoy* rationale, a life sentence without the possibility of parole under the 1977 amendment violated the Constitution because it increased the punishment for those defendants who chose to exercise their right to a jury trial. As such, we ordered those defendants who were sentenced to life without the possibility of parole under the 1977 amendment to be resentenced to life with the possibility of parole.

Notwithstanding our order in *Robtoy*, the Washington Supreme Court declined to follow *Robtoy*. *In re Personal Restraint Petition of Grisby*, 121 Wash.2d 419, 853 P.2d 901 (1993).

Snook claims that he was deprived of due process because the trial court failed to rule prior to the trial whether he would be sentenced under the 1975 statute or the 1977 amendment, and because the trial court imposed a death sentence under the unconstitutional 1975 statute instead of the 1977 amendment.[1]

According to Snook, if he had been sentenced under the 1977 amendment, his death sentence, which was reduced to life imprisonment without the possibility of parole, would

1. At the time of trial in 1977, the trial court could have tried Snook under the 1977 amendment without violating ex post facto prohibitions. *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In *Dobbert,* the Court

ruled that where a new law was wholly ameliorative and designed to remedy the perceived constitutional defects in the previous mandatory death penalty statute, the new law could be applied retroactively.

have to have been reduced to life imprisonment with the possibility of parole under *Robtoy.*

As the district court stated, "[t]his court must initially ·decide the threshold question of whether Snook's claim raises a federal issue, for it is well settled that habeas corpus relief is available only to correct errors of constitutional dimension. Alleged errors in the interpretation or application of state law do not warrant habeas relief." (citing *Peltier v. Wright,* 15 F.3d 860 (9th Cir.1994)).

■ Although Snook is correct in that the trial court could have applied the 1977 amendment, *Dobbert* did not require the application of the new law in Snook's case. Because the Washington Supreme Court held that the 1977 statute did not apply retroactively, *In re Snook,* 67 Wash.App. 714, 840 P.2d 207 (1992), Snook's argument that the trial court should have sentenced him under the 1977 amendment does not warrant habeas relief.

Snook also argues that he was deprived of fair notice of the charges or the possible sentences he faced because neither the trial court nor the prosecutor informed him of whether he would be sentenced under the 1975 or the 1977 statute. Snook's argument is without merit. Prior to Snook's trial, the prosecutor stated in court:

> It's the State's position at this time, Your Honor, that we have filed under the old act as far as the death penalty and as far as the charge is concerned of Aggravated First Degree Murder. We do not believe we come within the new act as far as the death penalty is concerned because of the fact that we have not given notice that we intend to ask for the death penalty to the defendant and his counsel.

Although the prosecutor stated that he did not intend to seek the death penalty, under the 1975 statute the penalty for aggravated first-degree murder was death. Thus, Snook and his attorneys were aware of the charges against Snook and that the 1975 statute would apply.

■ Snook was sentenced to death under the 1975 statute. It is undisputed that the mandatory death penalty under the 1975 statute was held unconstitutional. However, because only the death penalty portion of the 1975 statute was deemed unconstitutional, the Washington Supreme Court vacated Snook's death sentence, but left intact the sentence of life imprisonment without the possibility of parole under the savings clause of the 1975 statute. The savings provision was intended to address exactly this situation. Once Snook's sentence was held unconstitutional, his sentence of life imprisonment without the possibility of parole under the savings clause became effective. Therefore, because only the death penalty provision of the 1975 statute was held unconstitutional, Snook's current sentence, imposed under the savings clause, remains valid.

Additionally, because the 1975 savings clause, which imposed the life sentence without the possibility of parole, was· applicable to all defendants convicted under the 1975 statute, regardless of whether they went to a jury trial, the 1975 statute did not suffer from the same constitutional infirmities which rendered the 1977 amendment unconstitutional under *Robtoy.* Consequently, Snook's sentence of life imprisonment without the possibility of parole under the 1975 statute stands.

*"New Rule"*

In its October 6, 1995, written order, the district court, citing *United States v. Balough,* 820 F.2d 1485, 1488 (9th Cir.1987), stated:

> Absent a showing of an unusual fact situation in which the background and experience of the defendant in legal matters was apparent from the record, the court must specifically inquire into the elements of the crime charged. The court must specifically discuss, with the defendant, the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation.

The district court found that Snook was never warned by any court or attorney about the dangers of self-representation on appeal. The record did not reflect any facts or circumstances establishing Snook's knowing and intelligent waiver of assistance of counsel. Thus, the district court held that Snook

was denied his due process rights under the Constitution by being denied his right to effective assistance of counsel in appealing his capital murder conviction.

The State argues that by requiring an in-court colloquy with Snook regarding the disadvantages and possible dangers of self-representation, the district court retroactively applied a constitutional rule of criminal procedure which did not exist when Snook's conviction became final in 1979, in violation of the nonretroactivity principle and *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

■ "The nonretroactivity principle prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v. Bohlen*, 510 U.S. 383, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). Under *Teague*, a new rule of criminal procedure may not be applied or announced in a habeas corpus case unless the rule falls within one of two narrow exceptions. *Penry v. Lynaugh*, 492 U.S. 302, 313, 109 S.Ct. 2934, 2943–44, 106 L.Ed.2d 256 (1989). A "new rule," as contemplated by *Teague*, is one which "breaks new ground," "imposes a new obligation on the States or the Federal Government," or "was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. The first exception is for new rules that either decriminalize a class of conduct or that prohibit punishment for a particular class of defendants. *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 1263–64, 108 L.Ed.2d 415 (1990). The second exception allows for the announcement and retroactive application of a new rule if the new rule is a "watershed rule" of criminal procedure. A watershed rule is a rule that "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (quotations omitted).

In order to determine whether a state prisoner is entitled to habeas relief under *Teague*, we must conduct a three-pronged analysis. First, we determine the date on which the defendant's conviction and sentence became final. Second, we "survey the legal landscape as it then existed," *Caspari v. Bohlen*, 510 U.S. at ——, 114 S.Ct. at 953 (quoting *Graham v. Collins*, 506 U.S. 461, 468, 113 S.Ct. 892, 898, 122 L.Ed.2d 260 (1993)) (alterations omitted), "and determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." *Id.* (quoting *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990)) (alterations omitted). Finally, if we determine that the defendant seeks the benefit of a "new rule," we must determine whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle. *Id.*

■ A state conviction and sentence become final for purposes of the *Teague* analysis "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Id.* Snook's conviction and sentence became final in November 1979, ninety days after the Washington Court of Appeals terminated review of Snook's direct appeal.

Next, a survey of the legal landscape in 1979 indicates that the district court's ruling in this case did not apply a new constitutional rule, in violation of the nonretroactivity principle. The district court primarily relied on *Hendricks v. Zenon*, 993 F.2d 664 (9th Cir. 1993), and *Balough* in ruling that the state court should have specifically discussed with Snook the possible penalties, dangers, and disadvantages of self-representation. The state argues because both *Hendricks* and *Balough* were decided after 1979, the rule that a court must conduct an in-court colloquy with the defendant regarding the dangers of self-representation is a "new rule."

We disagree. The district court judge inquired into whether the trial court warned Snook of the dangers and consequences of self-representation. Finding that the trial court had not specifically warned Snook, the district court then examined the facts and

circumstances to determine if Snook's waiver was nevertheless knowing and intelligent.

The rule set forth in both *Hendricks* and *Balough* is that "in order to invoke the Sixth Amendment right to self-representation, the request must be: (1) knowing and intelligent, and (2) unequivocal." *Hendricks,* 993 F.2d at 669. "For a waiver to be made 'knowingly and intelligently,' the petitioner must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation." *Id.* at 670.

This is the same standard set forth by the Supreme Court in *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). In *Faretta,* the Supreme Court clearly stated that in order to grant a defendant's request to proceed pro se, there must be a showing that the defendant "knowingly and intelligently" waived his right to counsel.

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, *he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."*

*Id.* (emphasis added) (quoting *Adams v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

Thus, in 1979, when Snook's conviction and sentence became final, the law required the court to assure that the defendant is made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Id.*

Finding that the state court did not inform Snook of the dangers and disadvantages of self-representation, the district court examined the entire record in order to determine if the defendant's waiver was nevertheless knowing and intelligent. Therefore, the district court's ruling did not apply a new *per se* in-court colloquy rule in violation of the *Teague* nonretroactivity principle.

*Right to Counsel on Appeal*

In *Balough* and *Hendricks,* we recognized "that a limited exception may exist whereby a district court's failure to discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." *Balough,* 820 F.2d at 1488. In such cases, "we will look to the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused to determine whether the waiver was knowing and intelligent despite the absence of a specific inquiry on the record." *Id.* (quotations omitted). Nevertheless, before a defendant can make a knowing and intelligent waiver of counsel on appeal, the defendant must "be made aware of the dangers and disadvantages of self-representation," if not by the court, then by some other source. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541.

In this case, the district court held an evidentiary hearing, which the Washington state courts did not. The district court found that no one ever talked to Snook about the dangers and potential consequences of self-representation. Thus, the court determined that *Snook was never made aware of the dangers and disadvantages of self-representation.* There is no evidence in the record to contradict this finding. In light of this factual finding, the district court's partial grant of Snook's petition for writ of habeas corpus, directing the reinstatement of Snook's right to appeal with the assistance of counsel is affirmed.

## CONCLUSION

For the reasons stated above, the district court's decision is AFFIRMED.

EUGENE A. WRIGHT, Circuit Judge, concurring specially:

I concur in the majority's disposition of each issue. I write separately, however, to emphasize that my concurrence on the waiver of counsel issue is based upon the district court's finding during consideration of Snook's petition for habeas corpus that no court or attorney warned him about the dan-

gers of self-representation. Such a warning was required under *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Accordingly, it is my view we are not requiring an in-court colloquy and are not relying on a new rule of law.