Franco LOPEZ, a/k/a Eduardo
T. Hernandez, Petitioner–
Appellant,

v.

S. Frank THOMPSON, Respondent–
Appellee.

No. 97–35837.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1998.

Filed April 27, 1999.

Leland R. Berger, (argued), Portland, Oregon, for the petitioner-appellant.

Richard Wasserman, Assistant Attorney General, (argued), Salem, Oregon, for the respondent-appellee.

Before: ALDISERT,* WALLACE and KOZINSKI, Circuit Judges.

Opinion by Judge ALDISERT; Dissent by Judge KOZINSKI.

ALDISERT, Circuit Judge:

This appeal by Franco Lopez, a/k/a Eduardo T. Hernandez, from the denial of his petition for writ of habeas corpus brought under 28 U.S.C. § 2254, requires us to decide whether Appellant's waiver of his right to counsel at sentencing, following a no-contest plea to several sexual offenses in an Oregon state court, was knowing, intelligent, voluntary and with awareness of the dangers and disadvantages of self-representation. We are to review the detailed colloquies that took place on different days in open court between two Oregon state judges, Appellant's then counsel of record and the Appellant himself.

The district court had jurisdiction pursuant to 28 U.S.C. § 2254. Because the district court issued a certificate of probable cause, this court has jurisdiction pursuant to 28 U.S.C. § 2253. The appeal was timely filed. Rule 22(b), Federal Rules of Appellate Procedure. We conclude that the record supports the district court's determination of a knowing and intelligent waiver of counsel at sentencing and affirm the court's judgment.

---

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

## I.

In February 1989, Lopez sexually assaulted the 11–year–old daughter of a woman with whom he was living. Represented by counsel, he appeared before Judge Haas, a Multnomah County, Oregon, Circuit Court judge, in October 1989 and pleaded no-contest to three counts of sodomy in the first degree and one count of sex abuse in the first degree. At the plea hearing, Judge Haas explained to Lopez the possible prison terms and fines for each count as well as the possibility of probation. SER at 6. Lopez indicated that he understood. *Id.* The judge also explained that the district attorney, pursuant to a plea agreement, ER at 22–23, was seeking a "dangerous offender" charge, *see* Or.Rev.Stat. § 161.725, which increased Lopez's possible sentence on that count from 10–20 years to 15–30 years. SER at 7. Finally, the judge explained that a psychiatrist would examine Lopez to recommend whether or not he should be classified as a dangerous offender. *Id.* at 9. Again, Lopez indicated that he understood. *Id.*

On November 2, 1989, Lopez appeared before a different judge, Judge Roth, for a hearing on his motion to remove Attorney William Brennan as his counsel at the sentencing proceeding. Lopez had already successfully moved to replace three previous lawyers. He insisted to the court that he desired to proceed to the sentencing hearing without representation of counsel. ER at 42–44. Attorney Brennan recommended against Appellant's self-representation at sentencing and explained to Judge Roth in open court, in Lopez's presence, that psychiatrists would be evaluating Lopez for the purpose of determining the dangerous offender status:

> Mr. Brennan: We were in front of Judge Haas, and Mr. [Lopez] entered a pleading of no-contest on the underlying case. Sentencing was set for the 27th of November ah, and the fugitive matter which is I believe the second case down on your docket, ah, Judge Haas indicated that he would hear that matter at the conclusion of sentencing. Mr. [Lopez] has informed me that he wants to fire me and would like to represent himself.

> Mr. Lowe: Your honor, I should inform the court the state is opposed to any change ah, this would make the fifth attorney for this defendant: Mr. Levy, Mr. Ravio, Mr. Ameras [spelling uncertain], and Mr. Brennan have all been on this case and all have had difficulty with the defendant, umm . . .

> The Court: What charges does he have?

> Mr. Lowe: He has a fugitive matter and a number of Sodomy charges.

> Mr. Brennan: He has three counts of Sodomy in the First Degree, uh, and one count of Sex Abuse in the First Degree. Uh, the District Attorney, uh, would be recommending a dangerous offender treatment on one count, one count only. I have contacted Dr. Frank Collistro to evaluate Mr. [Lopez]. That is in place, and also Dr. David Meyers would be, uh, evaluating Mr. [Lopez], uh, and the two would then submit their reports to Judge Haas or testify as the case may be on that issue. I really think that Mr. [Lopez] would be better served by having an attorney to assist him rather than representing himself, uh . . .

> \* \* \* \* \* \*

> The Court: Mr. [Lopez], . . . How old are you?

> Mr. [Lopez]: 30 years old, sir.

> The Court: And how much education do you have? Formal education. Schooling.

> Mr. [Lopez]: Schooling?

> The Court: Yes.

> Mr. [Lopez]: High School.

The Court: Where?

Mr. [Lopez]: El Paso, Texas.

The Court: Any law training at all?

Mr. [Lopez]: I have some paralegal experience, sir.

\* \* \* \* \* \*

The Court: Well, here, here's the problem Mr. [Lopez]. I know Mr. Brennan. Mr. Brennan is a lawyer and he's going to do the best he can for you. Uh, and you've had other lawyers, and you are not a lawyer yourself. And the old saying is, even when a lawyer represents himself he has a fool for a client. Uh, so, it just doesn't work too well. You got to have legal advice and you got serious charges here.

Mr. [Lopez]: I understand that.

*Id.* at 32–37. Later, Lopez started talking about crimes he previously committed in Texas and he was advised strongly about the dangers of self-representation:

The Court: Now I don't want to get into the whole thing. Now all I want to do is, I'm listening to you and uh, uh, you want to represent yourself? Is that what you want?

Mr. [Lopez]: Well, if I have to. Yes, I would.

The Court: What do you mean you have to? Now you're having sort of second thoughts.

Mr. [Lopez]: No, no, now if you're going to put it that way, yes I will represent myself. The thing is, is that, your honor, this woman had hired me to murder her husband and this is the information that I have withheld from my attorney and from the district attorney's office.

Mr. Brennan: Mr. [Lopez], at this point I would advise you to remain silent.

The Court: Yes, I think this is . . .

Mr. Brennan: I strongly advise you to remain silent, I'm going on the record with that.

The Court: Yeah, now I . . .

Mr. Brennan: Follow my advice.

Mr. [Lopez]: I want this on the record because I want to put this out, evidently you're not representing me anymore. You know.....

Mr. Brennan: I'm still representing you until the court allows me to withdraw.

The Court: Yes, I am advising you Mr. [Lopez], you're not doing yourself any good putting this all down. I just, I tell yea [sic], uh, uh, now if this is the type of representation your [sic] going to make for yourself, your [sic] going to put a noose around your neck.

\* \* \* \* \* \*

The Court: Do you really want to represent yourself? You have a constitutional right to represent yourself as well as the right to have a lawyer.

Mr. [Lopez]: Yes, sir, if I may.

The Court: Now this is your decision.

Mr. [Lopez]: Yes.

The Court: Now you have been fully advised.

Mr. [Lopez]: I'm fully advised.

The Court: You know you have serious charges. You already entered a plea. So you got to know where you are. Uh, Judge Haas probably will not let you withdraw your plea of no-contest. You are coming up with sentencing. You know that.

Mr. [Lopez]: Yes.

The Court: You have only a couple of remedies as to make a strong pitch when you argue when you come up for sentencing before Judge Haas. Or to make a real pitch to say that I want to withdraw my plea and go to trial. That's where you are. Do you understand that?

Mr. [Lopez]: Yes, sir.

The Court: Now, is this what you want to do and represent yourself and try to handle this type of situation?

Mr. [Lopez]: Yes, sir.

The Court: Alright.

*Id.* at 41–44. On the same day, Lopez signed a written waiver of his right to counsel, which stated his understanding that an attorney could help him:

1) Investigate my case, call witnesses, and obtain evidence.

2) Research the law and raise constitutional issues....

3) Know and explain courtroom procedures and argue my case, or

4) Plea bargain for a reduced charge or sentence with the District Attorney.

*Id.* at 47.

Lopez proceeded to the sentencing hearing without representation of counsel. At sentencing, Lopez did not cross-examine the psychiatrist, but rather indicated that he was confused and needed the assistance of counsel. *Id.* at 51–52. Lopez acknowledged that he previously had fired four attorneys and that he understood when he waived counsel for sentencing that he would not be entitled to have another attorney appointed to represent him. *Id.*

The sentencing court adjudged Lopez to be a "dangerous offender" and sentenced him to 15–30 years on that count. *Id.* at 53–54. On the remaining three counts, the judge sentenced Lopez to consecutive prison sentences of 10–20, 10–20 and 2 1/2–5 years. *Id.* at 54–55.

Lopez filed a petition for writ of habeas corpus on February 28, 1995, alleging: (1) ineffective assistance of counsel, (2) violation of his right against double jeopardy, (3) denial of due process and (4) denial of the right to counsel at sentencing. *Id.* at 1–6.[1]

The issue presented for review is extremely narrow. We are to evaluate Appellant's basic contention that his waiver of counsel at sentencing was neither voluntary nor knowing because:

At no time did Judge Roth specifically advise [him] that he could have a lawyer assist him in deciding whether he wanted to cooperate with the evaluation process[,] ... that he could have a lawyer present during the evaluation[,] ... that he had the right to confront and cross-examine the doctor who performed the evaluation ... [and] that he had the right to have a lawyer help him with the difficult task of effectuating this confrontation right by effectively cross-examining the doctor.

Appellant's Br. at 13.

## II.

Because Lopez filed his petition on February 28, 1995, prior to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), the AEDPA's amendments to 28 U.S.C. §§ 2253 and 2254, 110 Stat. 1217–1219, do not apply to his petition. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

▮ Under pre-AEDPA law, this Court reviews *de novo* the district court's decision to dismiss a petition for writ of habeas corpus. *McKenna v. McDaniel,* 65 F.3d 1483, 1490 (9th Cir.1995). Habeas corpus relief is appropriate where the state court committed an error that had a

---

1. In responding to the petition, the State argued that Lopez procedurally defaulted his claims of constitutional error. The magistrate judge determined that Lopez had procedurally defaulted the double jeopardy and due process claims, and rejected the ineffective assistance of counsel and right to counsel at sentencing claims on the merits. ER at 65–80. The district court adopted the magistrate judge's recommendations and dismissed Lopez's petition on July 18, 1997. *Id.* at 81–83. The district court issued a certificate of probable cause for appeal on the issue of whether Lopez validly waived his right to counsel at sentencing. *Id.* at 86. Lopez's appeal on that issue followed. The State has not raised the issue of procedural default on appeal.

" 'substantial and injurious affect or influence' " on the outcome of the proceedings. *Id.* (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 627, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). The state court's factual findings are entitled to a presumption of correctness, 28 U.S.C. § 2254(d), and the district court's factual findings are reviewed for clear error. *McKenna,* 65 F.3d at 1490.

■ In felony cases, a criminal defendant is entitled to be represented by counsel at all critical stages of the prosecution, including sentencing. *Mempa v. Rhay,* 389 U.S. 128, 134, 136, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). It is clear that Lopez had a Sixth Amendment right to counsel at his sentencing hearing.

■ Nonetheless, a criminal defendant also has the right to waive assistance of counsel and represent himself or herself in a criminal proceeding. *Faretta v. California,* 422 U.S. 806, 833, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("But it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want."). Thus, it is clear that Lopez had the right to remove Attorney Brennan and proceed *pro se.*

■ In order to waive the right to counsel, a criminal defendant must make a knowing and intelligent decision that represents an exercise of his or her informed

free will. *Id.* at 835, 95 S.Ct. 2525. In *Faretta,* the Court carefully explained:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* (internal citations omitted).[2]

Lopez's waiver of his right to counsel met this test.

### A.

■ The colloquies between Appellant, his counsel and Judges Haas and Roth were equivalent to what has been deemed necessary by this court to constitute a valid waiver. *See, e.g., United States v. Van Krieken,* 39 F.3d 227, 229–230 (9th Cir.1994) (waiver sufficient where defendant was aware of nature of charges and possible sentences and judge, on several occasions, had warned him of perils of self-representation). At the plea hearing and the subsequent hearing to remove his counsel, Appellant was informed of the

---

**2.** The *Faretta* decision has been applied by this court in a number of cases. *See, e.g., Moreno v. Stewart,* 171 F.3d 658, 1999 WL 140733 (9th Cir.1999) ("In *Snook v. Wood,* 89 F.3d 605, 612 (9th Cir.1996), this Court was again presented with the question of the required constitutional inquiry that a state trial court must undertake before concluding that an accused has knowingly and voluntarily waived his Sixth Amendment right to counsel. We concluded that the Sixth Amendment necessitates that a state trial court, before letting an accused proceed pro se be assured that he 'is made aware of the dangers and disadvantages of self-representation so the record will establish that "he knows what he is doing and his choice is made with eyes open." ' *Snook,* 89 F.3d at 613 (quoting *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d 562). That is all that was required then under the Sixth Amendment, and that is all that is required now.") (footnote omitted); *United States v. Van Krieken,* 39 F.3d 227 (9th Cir.1994); *Menefield v. Borg,* 881 F.2d 696 (9th Cir. 1989); *United States v. Flewitt,* 874 F.2d 669 (9th Cir.1989); *Harding v. Lewis.,* 834 F.2d 853 (9th Cir.1987); *Milton v. Morris,* 767 F.2d 1443 (9th Cir.1985); *United States v. Rylander,* 714 F.2d 996 (9th Cir.1983); *United States v. Harris,* 683 F.2d 322 (9th Cir.1982); and *United States v. Kimmel,* 672 F.2d 720 (9th Cir.1982).

nature of the charges and proceedings against him, the possible sentences that might be imposed-including possible sentence enhancements-and the dangers of self-representation. ER at 36–37, 42. Additionally, Appellant was informed that psychiatrists would testify at the sentencing hearing on "the dangerous offender treatment." SER at 8. At all times, Lopez indicated that he understood.

Moreover, Lopez's waiver was unequivocal. Attorney Brennan and the judges repeatedly told Appellant, in no uncertain terms, that he faced significant dangers if he chose to proceed without the assistance of counsel. *See* ER at 33–37. Notwithstanding these warnings, Appellant persisted in his desire to appear *pro se* at his sentencing and informed the court that he was aware of the potential pitfalls of self-representation. ER at 42–43. Lopez at one point said he would represent himself "if I have to." If this response was equivocal, however, any doubts were erased when the judge proceeded to ask Lopez *seven* more times whether he really wanted to represent himself. ER at 41–44. Lopez answered affirmatively each time. The relevant dialogue concluded:

> The Court: Now, is this what you want to do and represent yourself and try to handle this type of situation?
> Mr. [Lopez]: Yes, sir.
> The Court: Alright.

*Id.* at 44.

### B.

Appellant contends that there was no knowing and voluntary waiver because Judge Roth did not "*specifically* advise [Lopez] that he had the right to confront and cross-examine the doctor who performed the evaluation." Appellant's Br. at 13 (emphasis added). Appellant cites no specific authority to support his theory, and our independent research has discovered none.

 To require a specific admonition regarding the right to cross-examine wit-

nesses would be to ignore the relevant jurisprudence governing self-representation in criminal matters. First, "[w]here a defendant, without counsel, acquiesces in a [sentencing proceeding] ... and later seeks release by the extraordinary remedy of *habeas corpus,* the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel." *Johnson v. Zerbst,* 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Second, a criminal defendant's right to self-representation is based on the rubrics of "free choice" and "personal liberty." *Faretta,* 422 U.S. at 834, 95 S.Ct. 2525. As a result, when evaluating whether there was a knowing and competent waiver, the court need not concern itself with the degree of the defendant's knowledge of criminal court procedure and substantive law. In *Faretta,* the Court specifically stated:

> We need make no assessment of how well or poorly [the defendant] had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire.* For [the defendant's] technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself.

*Id.* at 836, 95 S.Ct. 2525 (footnote omitted).

Were we to add an improper gloss to what the Supreme Court requires and announce the rule urged upon us by the Appellant-that the Court must specifically instruct on the right to cross-examination-a future waiver of counsel colloquy required of state and federal trial judges would be levitated to a crash course on "relevant rules of procedural and substantive law." This rule would run counter to the definitive instructions in *Faretta:*

> The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to

comply with relevant rules of procedural and substantive law.

*Id.* at 835 n. 46, 95 S.Ct. 2525.

What is required in a waiver proceeding is that a defendant "be made aware of the dangers and disadvantages of self-representation" and that the defendant " 'knowingly and intelligently' forgo those relinquished benefits." *Id.* Because at two separate hearings he received knowledge that reports and testimony of psychiatrists would be introduced at sentencing, these requirements have been satisfied.

### C.

■ Whether a criminal defendant waives his or her right to counsel before trial or, as here, just prior to sentencing, the inquiry is the same: whether the defendant's waiver was knowing, voluntary and intelligent. *See United States v. Salemo,* 61 F.3d 214, 220 (3d Cir.1995); *United States v. Day,* 998 F.2d 622, 626 (8th Cir. 1993). The Court of Appeals for the Third Circuit has held that an inquiry regarding the waiver of the right to counsel at sentencing need not be "as exhaustive and searching as a similar inquiry before the conclusion of trial." *Salemo,* 61 F.3d at 219. We agree.

We previously have held that a valid pre-trial waiver of counsel also effectively waives counsel at sentencing. *United States v. Springer,* 51 F.3d 861, 864 (9th Cir.1995). Under the teachings of *Springer,* Lopez could have waived his right to counsel prior to trial and that waiver would have carried through sentencing. There is no logical justification for requiring a more searching inquiry-as Appellant advocates-when the waiver occurs for the first time at sentencing.

### III.

This, too, must be emphasized. In reaching its conclusion that one has a constitutional right of self-representation because of "the inestimable worth of free choice," *Faretta,* 422 U.S. at 834, 95 S.Ct.

2525, the Court has made clear that when faced with such a request, a trial court need only satisfy itself that the defendant be made properly aware of the dangers and disadvantages of this "personal choice."

> The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Id.* (quoting *Illinois v. Allen,* 397 U.S. 337, 350–351, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).

That a trial court is obliged to accede to a proper request to remove counsel when waiver conditions are met is not to suggest that self-representation should be encouraged. Rather, the Court has emphasized that there are dangers that accompany self-representation:

> "Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more

true is it of the ignorant and illiterate, or those of feeble intellect."

*Id.* at 833 n. 43, 95 S.Ct. 2525 (quoting *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).

██ Judges Haas and Roth gave Lopez every opportunity to reconsider his decision to waive his right to counsel and proceed *pro se* at sentencing, yet Lopez repeatedly indicated that his waiver was made with full knowledge of the perils that he faced. *See Godinez v. Moran,* 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself.") (emphasis in original).

### IV.

There is simply no case law or acceptable rationale to mandate a self-representation inquiry of the extraordinary specificity Lopez demands. He was aware of the details of the dangerous offender law, as well as the accompanying psychiatric evaluation, and was admonished on numerous occasions of the perils of proceeding to sentencing *pro se.* Because Appellant knowingly, voluntarily, intelligently and unequivocally assumed the dangers and disadvantages of self-representation, he cannot now complain that his constitutional right to counsel at sentencing was violated.

AFFIRMED.

KOZINSKI, Circuit Judge, dissenting:

If we were writing on a clean slate, I might agree that Lopez's dogged insis-

tence that he counsel and represent himself was enough to waive his right to counsel. However, the Supreme Court and numerous Ninth Circuit cases have made it clear that a judge must inform a defendant in no uncertain terms of, among other things, "the dangers and disadvantages of self-representation." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The majority says Lopez was so advised, but I can find nothing in the record that satisfies the high standard our previous cases have announced for what constitutes an adequate warning.[1]

Although we've stopped short of articulating a precise litany on the dangers and disadvantages of self-representation, *see United States v. Keen,* 104 F.3d 1111, 1114 (9th Cir.1996), we've made it clear that a judge must ensure "that the defendant understood his or her 'constitutional right to have [a] lawyer perform certain core functions,' and that he or she 'appreciate[d] the possible consequences of mishandling these core functions and the lawyer's superior ability to handle them.'" *United States v. Mohawk,* 20 F.3d 1480, 1484 (9th Cir.1994) (quoting *United States v. Kimmel,* 672 F.2d 720, 721 (9th Cir. 1982)). We've held that telling a defendant he will have to handle sentencing himself isn't enough. *See United States v. Balough,* 820 F.2d 1485, 1486 n. 1, 1488 (9th Cir.1987). Nor is informing a defendant that he'll have to argue and cross-examine witnesses. *See Keen,* 104 F.3d at 1115. The judge here didn't even get this specific. He told Lopez: "[E]ven when a lawyer represents himself, he has a fool

---

1. Another panel recently held that the three-part colloquy set out in *United States v. Balough,* 820 F.2d 1485 (9th Cir.1987), is not constitutionally compelled and therefore cannot be required in section 2254 cases. *See Moreno v. Stewart,* 171 F.3d 658, 661 (9th Cir.1999). However, the requirement that a court inform a defendant of the dangers and disadvantages of self-representation comes directly from *Faretta,* and applies with equal force in state and federal cases. Thus, even in this state habeas action, our precedent

about what constitutes an adequate warning on the dangers and disadvantages of self-representation-written mostly in federal appeals-is binding. I happen to believe that *Moreno* conflicts with our earlier cases like *Harding v. Lewis,* 834 F.2d 853 (9th Cir.1987), and *Snook v. Wood,* 89 F.3d 605 (9th Cir.1996). *See Moreno,* at 671–72 (Tashima, J., dissenting). But even if *Moreno* is correct, our case differs from *Moreno* because petitioner here was not warned *at all* about the dangers of self-representation.

for a client"; "[Y]ou're going to put a noose around your neck"; and "You have ... to make a strong pitch when you argue." If the colloquies in *Balough* and *Keen* were not sufficient to uphold the defendants' waivers, the exchange here, rich with aphorisms and hyperbole but with no specific mention of a lawyer's "core functions," is certainly not.[2]

This being said, I agree that this court's formalistic approach "unduly burdens the very rights guaranteed by *Faretta*." *Balough*, 820 F.2d at 1490 (Kozinski, J., concurring). However, a three-judge panel doesn't have the power to reverse the circuit's course. Under our precedent, the judge needed to advise Lopez of the ways in which a lawyer could have assisted him before accepting his *Faretta* waiver. The judge failed to do so, and we must therefore vacate Lopez's sentence.

---

**2.** Had it been announced in open court, *see Balough*, 820 F.2d at 1488, the information provided in the waiver form surely would have been sufficient, but it was not.