**Daniel Arvizu MORENO,
Petitioner–Appellee,**

v.

**Terry L. STEWART;** [1] **Attorney General for the State of Arizona,
Respondents–Appellants.**

**No. 97–17238.**

United States Court of Appeals,
Ninth Circuit.

Submitted[2] Jan. 14, 1999.

Decided March 17, 1999.

---

1. Terry L. Stewart is substituted for Samuel A. Lewis, his predecessor, as Director, Arizona Department of Corrections, pursuant to Fed. R.App. P. 43(c).

2. The panel unanimously finds this case appropriate for submission without argument. Fed. R.App. P. 34(a)(2).

Bruce M. Ferg, Tucson, Arizona, for the respondents-appellants.

Daniel Arvizu Moreno, Pro per, Florence, Arizona, petitioner-appellee.

Before: SNEED, TASHIMA, and SILVERMAN, Circuit Judges.

Opinion by Judge SNEED; Dissent by Judge TASHIMA.

SNEED, Circuit Judge:

Arizona prison warden Terry Stewart and the State of Arizona ("respondents") appeal from the decision of the District Court for the District of Arizona, Judge Robert C. Broomfield, granting the habeas corpus petition of state prisoner Daniel Arvizu Moreno ("petitioner"). The district court held that the Arizona state trial court's colloquy with petitioner failed to establish that petitioner knowingly, voluntarily and intelligently waived his Sixth Amendment right to counsel and reversed petitioner's 36–year sentence for armed robbery. We have jurisdiction pursuant to 28 U.S.C. § 2253 and reverse.

**3.** We have included the full text of these two colloquies in the Appendix which appears af-

## BACKGROUND

On August 1, 1979, petitioner was indicted in Maricopa County on one count of armed robbery. He was arrested on November 29, 1979, and the trial court appointed the Maricopa County Public Defender's Office to represent him.

Petitioner subsequently was transferred to prison in Pima County to stand trial on unrelated armed robbery and aggravated assault charges. He later escaped from jail and was rearrested on March 6, 1980. He was tried and convicted in Pima County and sentenced to 144 years in prison; his present petition does not affect that sentence.

After his conviction in Pima County, petitioner was transferred back to Maricopa County jail. Petitioner was unhappy with three different public defenders assigned to represent him; the public defender's office and trial court accommodated his first two requests and reassigned his case to new counsel. However, the third time that petitioner appeared before the trial court complaining of his counsel, the judge refused to assign petitioner another attorney after concluding that petitioner failed to articulate a legitimate reason as to why he was dissatisfied with counsel.

On February 2, 1981, petitioner informed the trial court that he wanted to represent himself. The trial court conducted two separate colloquies with petitioner and subsequently granted his motion.[3] The judge appointed a public defender as "amicus curiae" counsel for petitioner for the duration of the trial.

A jury found petitioner guilty on February 19, 1981, and the trial court sentenced him to a 36–year sentence to run concurrently with the 144–year sentence imposed in Pima County. Petitioner appealed the conviction and the Arizona Supreme Court affirmed.

ter the conclusion of this opinion.

Petitioner filed the instant petition ten years after his conviction and sentence were affirmed by the Arizona Supreme Court. He alleged that the trial court improperly allowed him to proceed without counsel. The magistrate judge below recommended that the district court grant the petition; the district court agreed. Respondents now appeal that decision.

## ANALYSIS

Respondents contend that the district court erred in concluding that (1) a state trial court is constitutionally compelled under the Sixth Amendment to engage in a colloquy with the accused that mirrors the one set forth by this Court in *United States v. Balough*, 820 F.2d 1485 (9th Cir. 1987), and (2) petitioner did not knowingly and intelligently waive his right to counsel. We agree with respondents' arguments and reverse.

A. *Required Inquiry Under* Faretta.

■ The Sixth Amendment to the United States Constitution provides that "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court announced that the Sixth Amendment also provides a correlative right to self-representation. Before a trial court will allow an accused to exercise the right of self-representation, it must conclude that the accused has "knowingly and intelligently" waived his underlying right to counsel. *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d 562 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938)). Consequently, a trial court must ensure that the accused has been "made aware of the dangers and disadvantages of self-representation, so that the record will

establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).[4]

This Court, beginning with its decision in *United States v. Dujanovic*, 486 F.2d 182 (9th Cir.1973), which preceded the Supreme Court's opinion in *Faretta* by one year, has required federal trial courts to conclude that a defendant has knowingly and voluntarily waived his right to counsel before allowing him to proceed pro se. In *Dujanovic*, this Court set forth a recommended colloquy that a district court conduct with a defendant before the court conclude that the defendant has waived his right to counsel. Specifically, this Court instructed a district court to inquire whether "the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, and the dangers of self-representation." *United States v. Harris*, 683 F.2d 322, 324 (9th Cir.1982) (citing *Dujanovic*, 486 F.2d at 188). One year later, in *Faretta*, the Supreme Court addressed the issue of waiver of the right to counsel under the Sixth Amendment and concluded that a trial court must be satisfied that a defendant wishing to proceed without the assistance of counsel "knows what he is doing and" makes "his choice ... with eyes open." 422 U.S. at 832, 95 S.Ct. at 2541, 45 L.Ed.2d 562. The Court made no mention of the *Dujanovic* opinion nor did it set forth the guidelines articulated in *Dujanovic* as required procedure for a trial court to follow before it concludes that a defendant has "knowingly and intelligently" waived his Sixth Amendment right to counsel.

Notwithstanding *Faretta*, this Court in *United States v. Balough*, 820 F.2d 1485 (9th Cir.1987), again set forth the "preferred procedure" for a federal district

---

4. In *Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541, 45 L.Ed.2d 562, the Supreme Court found waiver where the defendant was (1) "literate, competent and understanding," (2) "voluntarily exercising his informed free

will," (3) warned by the trial judge that "he thought it was a mistake not to accept the assistance of counsel," and (4) informed that he would be "required to follow all the 'ground rules' of trial procedure."

court to follow before it allows a defendant in federal court to waive his Sixth Amendment right to counsel. We stated that

> a district court should not grant a defendant's request to waive representation of counsel and serve as his own counsel, without discussing with the defendant, in open court, whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, and the dangers of self-representation. This is clearly the preferable procedure and should be followed by district courts in every case.

*Balough,* 820 F.2d at 1488 (quoting *Harris,* 683 F.2d at 324). We also emphasized that "a limited exception may exist whereby a district court's failure to discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." *Id.* (citing *Harris,* 683 F.2d at 324; *United States v. Kimmel,* 672 F.2d 720, 722 (9th Cir.1982); *United States v. Bird,* 621 F.2d 989, 991 (9th Cir.1980); *United States v. Gillings,* 568 F.2d 1307, 1309 (9th Cir.1978); and *Cooley v. United States,* 501 F.2d 1249, 1252 (9th Cir.1974)). We noted that application of this exception is "limited" and only applies in "rare" cases. *Id.* Nowhere in *Balough* or, for that matter, in any of our subsequent decisions, have we ever concluded that this procedure, originally set forth as a guideline for district courts, is compelled by the Sixth Amendment to the Constitution.

The district court nonetheless held that the procedure we first articulated in *Dujanovic* and crystallized in *Balough* is constitutionally compelled and must be applied in this case. The district court was incorrect. Although we have applied the *Balough* framework in habeas cases challenging state convictions, we have also made it clear that those "federal cases on this issue are *instructive,*" *Hendricks v. Zenon,* 993 F.2d 664, 669 (9th Cir.1993) (emphasis added), not binding, *see Harding v. Lewis,* 834 F.2d 853, 857–58 (9th Cir.1987) ("The preferable procedure for determining whether the waiver is made knowingly and intelligently is to discuss with the defendant in open court his understanding of the charges, the possible penalties, and the dangers of self-representation. The failure to engage the defendant in such a colloquy does not necessitate reversal, however, if the record otherwise reveals a knowing and intelligent waiver.") (citations omitted). Whereas this Court has the power to impose a procedural framework on district courts, it cannot similarly do so to state courts if that framework is not constitutionally compelled.[5] To repeat, we hold that the framework articulated in the *Balough* line of decisions is not compelled by Sixth Amendment.[6]

In *Snook v. Wood,* 89 F.3d 605, 612 (9th Cir.1996), this Court was again presented with the question of the required constitutional inquiry that a state trial court must undertake before concluding that an ac-

---

5. Indeed,

> [A] federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution. As we said in *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973):
>
> > Before a federal court may overturn a conviction resulting from a state trial ... it must be established not merely that the [State's action] is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.... Federal courts hold no supervisory authority over state judicial

proceedings and may intervene only to correct wrongs of constitutional dimension.

*Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982).

In addition, because *Balough* is not a rule of constitutional law, it is not available to a petitioner proceeding with a habeas corpus petition. *See generally Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3048–49, 49 L.Ed.2d 1067 (1976) (holding that protections not guaranteed by federal law or the Constitution are not available as grounds for challenging conviction at habeas corpus review).

6. It is clear that the trial court in this case did not follow the *Balough* framework.

cused has knowingly and voluntarily waived his Sixth Amendment right to counsel.[7] We concluded that the Sixth Amendment necessitates that a state trial court, before letting an accused proceed pro se be assured that he "is made aware of the dangers and disadvantages of self-representation so the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Snook*, 89 F.3d at 613 (quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d 562). That is all that was required then under the Sixth Amendment, and that is all that is required now. To repeat, *Balough* is not a rule of constitutional procedure; rather it represents a recommended framework for courts to follow in conducting an analysis of the record to determine if an accused has voluntarily and knowingly waived his Sixth Amendment right to counsel.[8]

We now turn to an analysis of the record as a whole to determine if the trial court properly made petitioner "aware of the dangers and disadvantages of self-representation, so that the record ... establish[es] that he kn[ew] what he wa[s] doing and his choice [wa]s made with eyes open." *Faretta*, 422 U.S. at 832, 95 S.Ct. at 2541,

45 L.Ed.2d 562. We conclude, after reviewing the record, that the trial court fulfilled its duty and petitioner knowingly and intelligently waived his right to representation.

**B.  *Review of the Record Below.***

To repeat, in *Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541, 45 L.Ed.2d 562, the Supreme Court found waiver where the defendant was (1) "literate, competent and understanding," (2) "voluntarily exercising his informed free will," (3) warned by the trial judge that "he thought it was a mistake not to accept the assistance of counsel," and (4) informed that he would be "required to follow all the 'ground rules' of trial procedure." We caution that a trial court need not find all four of these elements before it concludes that an individual has waived his right. It also follows that a finding of all four of these elements does not necessitate a decision that a defendant has waived his right to counsel. In this case, however, we are satisfied that the trial court carefully inquired on all four subjects and that the record, viewed as a whole, reflects that the petitioner knowingly and intelligently waived his right to counsel.[9]

---

7. In *Snook*, the actual question before this Court was what the state of *Faretta* law was in 1979 for purposes of the retroactivity analysis under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We concluded that, in 1979, a trial court was required to warn a defendant of the dangers of self-representation; we did not hold that a trial court was required to go through a *Balough*-type inquiry.

8. Because we conclude that *Balough* did not create a rule of constitutional procedure, we need not reach respondents' argument that *Teague*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, controls. *Cf. Snook*, 89 F.3d at 612.

9. The dissent complains that "Moreno was not queried or informed about any of the intricacies of trying a criminal case, including voir dire and jury selection, the rules of evidence (*e.g.*, hearsay, leading questions, authentication, opinion testimony), his familiarity with obtaining compulsory process for wit-

nesses or documents, discovery, or *Brady* rights." Dissent at 2196–97. We agree.

Trial courts, however, are not required to *teach* each defendant, wishing to proceed pro se, the intricacies of criminal procedure and evidence. That is precisely why every criminal defendant has a right to counsel in the first place. *Faretta* counsels only that trial courts must make a defendant aware that proceeding without counsel is a mistake because only properly trained counsel knows "all the 'ground rules' of trial procedure." 422 U.S. at 835–36, 95 S.Ct. at 2541, 45 L.Ed.2d 562.

In this case, the trial court clearly told petitioner that:

> You may represent yourself, but I will charge you Mr. Moreno with the full responsibility of any lawyer representing you. In other words, just because you do not have any legal training will not be an excuse at some future date that an error was made in the trial and you didn't know about it. You will be charged with

The trial court engaged in two separate colloquies with the petitioner regarding his decision to represent himself, one on February 2, 1981, and one on February 6, 1981. The trial court, on numerous occasions during these colloquies, informed the petitioner of the dangers of self-representation. On February 2, the court told petitioner:

COURT: In that case then I will have your present attorney as amicus to the court, and he will sit in back of the courtroom and advise the court whether anything in error is being committed in the trial.

You may represent yourself, but I will charge you Mr. Moreno with the full responsibility of any lawyer representing you. In other words, just because you do not have any legal training will not be an excuse at some future date that an error was made in the trial and you didn't know about it. You will be charged with the same knowledge as an attorney in this court room. I will not bend over backwards to help you if a mistake is being made. Do you understand that?

Petitioner told the court: "Yeah, I understand what you're saying."

Later in the hearing, the court again instructed petitioner of the dangers of self-representation and warned petitioner to reconsider his "foolish" decision:

COURT: I want to warn you of the consequences of representing yourself, like I told you earlier, I'm not going to give you any special favors or compensation, and if the State asks some question that shouldn't be asked, I'm not going to stop them because my job is to rule on objections and if you're not objecting or if you don't know enough to object, that question is probably going to get in and the jury is going to hear the answer. So you really ought to have an attorney

representing you because if you don't, it will go down very poorly for you and it would be foolish too, and I would only appoint another attorney at County expense if you could show that he can't do the job for you.

On February 6, the court revisited this issue:

COURT: All right. We need to make sure that you understand-first of all, I'm sure you're aware of this, that anything you say can and will be used against you, since it's being put down on the record. I want you to be cautious about that, even though you're representing yourself as your attorney. Whatever is said in this courtroom or in chambers, or anything that you write to the court, the prosecution is ongoing to have a right to see it.

So, I just want you to know that that can be used against you at a subsequent time, if you make any admissions. You will be required to meet the same standards as any attorney in this courtroom. I will not do any more or any less for you because you choose to represent yourself. I'll expect you to represent yourself.

. . . .

COURT: You understand what I'm saying so far?

MORENO: Yes, I do.

. . . .

COURT: . . . I don't believe there is anything else that we need to discuss, except Mr. Tresbesch and Mr. Moreno, I would tell you that only one person-I would not expect Mr. Tresbesch to be running your case for you. In other words, you're in charge of your case. So if some evidence or question that comes in that's objectionable, if you

the same knowledge as an attorney in this court room. I will not bend over backwards to help you if a mistake is being made. Do you understand that?

We find this colloquy more than sufficient under *Faretta*.

don't object to it, he's not going to get up and object to it.

. . . .

COURT: You understand that?

MORENO: Yes, I do.

The court also warned petitioner that his decision would affect his post-trial options as well:

COURT: I think the reason that this has to be made clear, Mr. Moreno, is that you do have those rights, and if the trial should go adversely to you and you appeal the decision of the jury, if it's a guilty verdict, that one of the grounds for appeal is that maybe you were not represented by counsel and you should have been.

I want you to understand that this is the time now that you're making that decision, that you can or cannot be represented by an attorney that I'm providing for you. And you're really abandoning probably that appeal or giving up that right to appeal at this point by consciously choosing not to have that attorney I've provided for you. You understand that?

Notwithstanding these admonitions, petitioner freely waived his right to counsel.[10] The record, taken as a whole, indicates that petitioner freely and voluntarily waived his right to counsel, even after he was informed (1) of the dangers of self-representation, including the absence of trained legal assistance and (2) that the trial court viewed his decision as "foolish" and warned that he would still be required to follow the rules of court and would not receive any special treatment at trial. In sum, we conclude that the record supports the conclusion that the trial court was satisfied that petitioner "knows what he is doing and his choice is made with eyes open." The decision of the district court is therefore

REVERSED.

## APPENDIX

*Transcript of the Hearing on February 2, 1981.*

COURT: State versus Moreno. State ready?

STATE: Bob Colosi, County Attorney's Office, your Honor.

COURT: This is the last date set for trial and I don't have anything formally set before me, but I understand that Mr. Moreno has a motion to discharge his attorney orally. Is that correct, Mr. Moreno? Is that right?

MORENO: That's right.

COURT: Mr. Moreno, I have no problem with you getting rid of your attorney. I can't make you have any attorney. If you're unhappy with the services of your attorney, I suppose I could allow you to proceed and represent yourself, if that's what you want to do.

The attorney that this Court provided to you, as far as I know at this point is satisfactory. You have not given me any grounds to hire a new attorney for you, so to that extent you'll have to make a decision if you want to represent yourself at the trial, because I don't plan to hire anybody else for you. Could you please tell me what you intend to do?

MORENO: I'm being denied a fair trial then, in those words.

COURT: That wasn't the question I asked you. The question is whether you wish to represent yourself?

MORENO: Yes, I do.

---

**10.** The dissent argues that the trial judge did not explain the nature of the charges or the possible penalties to the petitioner. The dissent does *not* argue that he really didn't know. In fact, the record shows that just one year prior to his armed robbery trial in this case, the petitioner had been convicted of three counts of armed robbery (and three counts of aggravated assault) in a separate case and had been sentenced to 144 years in prison. In the absence of any evidence to the contrary, this fact permits an inference that petitioner was not unfamiliar with the nature of the charges and the possible sentence.

COURT: In that case then I will have your present attorney as amicus to the court, and he will sit in back of the courtroom and advise the court whether anything in error is being committed in the trial.

You may represent yourself, but I will charge you Mr. Moreno with the full responsibility of any lawyer representing you. In other words, just because you do not have any legal training will not be an excuse at some future date that an error was made in the trial and you didn't know about it. You will be charged with the same knowledge as an attorney in this court room. I will not bend over backwards to help you if a mistake is being made. Do you understand that?

MORENO: Yeah, I understand what you're saying.

COURT: All right. Now, if you can show me that this attorney is unable to effectively represent you, I would consider appointing another attorney, but at this point I don't have anything before me. Do you care to say anything about that?

MORENO: Yes, I do.

COURT: Go ahead.

MORENO: I feel there is lack of communication between me and my attorney. I also feel that there's conflict of interest between that firm and my case because Mr. Terry Adams, when that one had my case—was a lack of communication. I really feel that—I know he's overworked, like he told me, you know, lately. He picked up my file and decided he had to work on it, you know, and it—I feel that's not enough time for me, you know, to keep postponing these trial dates. I feel that between the Public Defender's Office and co-defendant being represented—I don't know by them or not, but I feel that the Public defender would be a conflict of interest right there.

COURT: Are you aware of any conflict of interest?

TREBESCH: The only thing I could think of what he's referring to is Patty Moeher (phonetic). Is that what you're talking about now?

MORENO: Well, it could be that, but I'm not really saying that.

TREBESCH: There's no conflict. The reason I'm talking about Patty Moeher is because he asked me a question about her, if she had any charges filed against her, and I checked that out and she never had any charges filed here.

COURT: Why is the firm of the Public Defender's Office a conflict?

MORENO: Well, because I feel—I don't know, but I feel there is.

COURT: You will have to tell me. Please tell me why.

MORENO: I feel—I don't know how financially they do it. Does the State pay them or what? I don't know. I feel that that's a reason, if the State is paying them. I feel that's a reason, a conflict of interest.

COURT: That isn't sufficient conflict of interest. Do you have any alternatives? What else would you want? If you wanted a private street counsel, the State is going to have to pay him too.

MORENO: Yeah, but it's not from the same firm.

COURT: It's still the State's money being used. If you come up with some reason that he can represent you, I'll instruct counsel to get communication, lines of communication going. Are you telling me you don't want a lawyer representing you? At this point I don't have any reason to appoint anybody else. He's doing an adequate job. The trial is set in two weeks.

MORENO: Well, that's just the thing, see, he comes two days before my trial and tells me this, just like the last one, "Are you ready?" and you know, I haven't seen him since. One time I seen him, this Saturday, and I seen him when he

was first appointed. He came down to Tucson to tell me that he was my attorney and didn't discuss the case or nothing, and I've been here waiting for him to come, you know, and—

STATE: Your Honor, I was wondering if I could be heard for a moment, because this is such an important right that the defendant appears to be giving up, such important consequences. I was wondering if the Court would give the defendant a few minutes to consider the alternatives of having Mr. Trebesch represent him or having to represent himself. I think the consequences are very significant, and perhaps with some reflection he might either absolutely decide he wants to do it or decide Mr. Trebesch should be on the case.

COURT: I'm not going to force him to make the decision now. He told me when it comes to trial date, if you still don't want this man to represent you, he won't be representing you. You can sit at that table by yourself and take care of it from there.

If you can show me a reason why Mr. Trebesch is unable to represent you, and I agree with your reason, I'll discharge him and appoint somebody else for you, but so far I don't see any conflict of interest that you've told me about, and the fact that he has not seen you enough is something that-the trial is two weeks away, so I will encourage you to start seeing this individual to the extent that you're both able to get a defense going for you.

Mr. Moreno, I'm not trying to do anything to you or for you or against you. I just want to do what you want to do, but you have got to tell me some reasons why that man back there is not a competent attorney and can't represent you adequately in trial, other than he hasn't seen you enough.

If you can get those reasons set out in writing and send them up here to me through jail communication, I'll look

them over and we can make a determination whether you're able or unable to be represented by this individual, and if you flat out tell me on the day of trial that you don't want him to represent you, then I'll make him sit in back of the courtroom and you can represent yourself, or in the meantime you can get yourself your own attorney and have him come out in here and represent you. If you want one at County expense, which I'm paying for and the County is paying for on your behalf, then it will be this gentleman behind you, until such time you can show me that he's unable to act as a competent attorney.

Now, as far as the time set for trial, this is last day set for trial, but the State apparently wants to make a record on why he's requesting a motion to continue at this point.

STATE: Your honor, I'm not sure—I just want to bring the following facts to the Court's attention. On December 1st of 1980, this case was set to go to trial and it was a last day case. The State has two out-of-town witnesses, both are eye witnesses or identification witnesses in this case. The State, through those witnesses—and the State had them ready to testify on December 1st, and on December 1st, suddenly defendant Moreno decided that he no longer wished to have Terry Adams as his defense attorney. The Court agreed to appoint a new attorney and exclude the time.

Now, the State was ready to proceed at that time. State was ready to proceed in January when there was a motion to continue, and then approximately a week ago Mr. Trebesch indicated that he would like to have until February 17th before he had to go to trial in this matter, and the State ha no opposition to it, but the State did not take steps to bring in the out-of-state witnesses, and the State feels that because of the December 1st delay, when the State was ready to proceed with the out-of-state witnesses, that the Court should consid-

er a motion to continue by the defense, and have the matter continued until February 17th, 1981. The State cannot get its witnesses in until the 17th because of statements by the defense.

COURT: Mr. Trebesch, do you want to comment?

DEFENSE: Your Honor, I filed a motion last Friday asking for a continuance until the 17th, and since the defendant has brought up the subject of client contact, perhaps I should express my thoughts on that matter a little bit.

I was put on this case approximately the middle of December. There was a short period of time in between when Terry Adams had this case, and at that time our office had the case for a few days, and it was administratively reassigned to me.

After that point, I visited the defendant on the 18th of December in the Pima County Jain in Tucson, Arizona. At that time I advised him that I would be gone from the office for two weeks for vacation. As it happened I was gone from the office for three weeks.

I missed a week of work after my vacation when I was out from the office ill, so since my visit on the 18th of December, I was gone a total of three weeks from the office, one could imagine the work load our office had, having been gone that period of time. I was buried, so to speak, in work when I came back.

Until Saturday I had basically only one contact with Mr. Moreno. That was a very brief appearance in Court, in Judge Gerber's court, when I talked to him very briefly. I contacted him Saturday in jail, and that's when the difficulty arose.

Additionally, I did send him some information a week ago today, as of Saturday, and he said he didn't receive that information in jail yet, but basically, your honor, the reason for the continuance is because of my case load being so behind after missing three weeks' [sic] work. I didn't think that I was ready to go, at this point today, on the trial, where the defendant is facing consequences such as he is.

I didn't want the 30-day continuance though. This is the last day of trial setting, and I ask for a 15-day continuance. I need that extra time to prepare for trial, however, if Mr. Moreno wishes to represent himself that would obviously change things along that line.

COURT: Mr. Moreno, let me propose this solution for you right now. Dean Trebesch, I know from experience in this courthouse, and if you ask around the jail they'll probably tell you he's a pretty good defense attorney. He's obviously been sick for three weeks and hasn't had a chance to get to you.

See what happens in the next two weeks and see if you can get enough time with him so that you get a defense prepared, get the witnesses you need, whatever defense you have or whatever you're going to do, then let me know by correspondence if you want to get him off the case, and want to represent yourself. I think you'll find in a couple of weeks that you'll probably be prepared to go to trial, and you'll have a lot more confidence in him, but if you don't and you want to represent yourself, so be it, you can.

I want to warn you of the consequences of representing yourself, like I told you earlier, I'm not going to give you any special favors or compensation, and if the State asks some question that shouldn't be asked, I'm not going to stop them because my job is to rule on objections and if you're not objecting or if you don't know enough to object, that question is probably going to get in and the jury is going to hear the answer.

So you really ought to have an attorney representing you because if you don't, it will go down very poorly for you and it would be foolish too, and I would only appoint another attorney at County ex-

pense if you could show that he can't do the job for you. At this point his only problem has been illness, sickness, and two week's vacation and maybe you can get together and do it. Let me know by mail what you plan to do.

In view of the fact that he has moved to continue, I will accept that and we'll continue this until the—14th was it?

STATE: 17th, your Honor.

COURT: 17th of February for trial at 9:00 o'clock before this division, Court finding extraordinary circumstances existing for the continuance.

We'll take it from there, but talk to Mr. Trebesch, Mr. Moreno, if you want to. You don't have to, but if you want to talk to him and see if you're going to be able to work something out with him in way of a defense, and if he, and if he's going to represent you adequately.

If you want to represent yourself, I won't tell you if it's a good idea, but if you want to, you may do so, but you'll have to let me know if you can come up with any reasons why he can't represent you. I mean solid, concrete reasons.

Court stands in recess.

*Transcript of the Hearing on February 6, 1981.*

(The following proceedings were held in open court at 1:45:)

COURT: This is cause number 108010, State versus Daniel Moreno.

STATE: Robert Colosi for the State, Your Honor.

COURT: Defense ready?

TREBESCH: Yes, Your Honor. Dean Trebesch appearing for the defendant.

Your Honor, as this Court will remember, we had a discussion on this matter this past Monday as to whether Mr. Moreno would represent himself on this matter, or whether he wanted by continued representation.

After that discussion there was another meeting at Judge Gerber's court regarding basically the same matter, concerning the other charge against the defendant.

Wednesday I went to see Mr. Moreno. Mr. Moreno indicated to me at that point that on both matters, I believe, he wished to represent himself. I told Mr. Moreno at that time that I would provide to him all of the court information on both matters to him, that he previously did not have, and at this point, before we inquire of Mr. Moreno regarding his wishes on this case, I would state that—regarding first of all CR–108010, which is in this court, that at this time I will supply Mr. Moreno with an envelope containing all the file information regarding this matter, except for two things: One is an interview with Patty Mosier, which I believe Mr. Moreno has indicated to me he already has received from me; and furthermore, the police reports on this case, which I also believe Mr. Moreno indicated that he had previously, I believe, from Mr. Adams on this case.

Additionally, I would provide Mr. Moreno, regarding CR–115620, an envelope containing all the file information that I have on that case. I don't believe Mr. Moreno had ever received anything in that matter before, so I will give him the file containing a Xeroxed copy of everything, ranging from the indictment to police reports on that matter.

COURT: Mr. Moreno, this is the time for the determination of counsel. Could you please tell me what your intentions are as to having counsel represent you, or do you intend to represent yourself, or what is the situation at this point, for the record—for future appellate purposes?

MORENO: Like—like I said, I do not want to be represented by the Public Defender's Office.

COURT: Okay. Do you intend to represent yourself at this point, or do you have another counsel?

MORENO: No. I have no choice to—but to represent myself.

COURT: All right. We need to make sure that you understand—first of all, I'm sure you're aware of this, that anything you say can and will be used against you, since it's being put down on the record. I want you to be cautious about that, even though you're representing yourself as your attorney. Whatever is said in this courtroom or in chambers, or anything that you write to the court, the prosecution is going to have a right to see it.

So, I just want you to know that that can be used against you at a subsequent time, if you make any admissions. You will be required to meet the same standards as any attorney in this courtroom. I will not do any more or any less for you because you choose to represent yourself. I'll expect you to represent yourself.

I'm going to have Mr. Trebesch remain as what we call amicus, or friend of the Court. That is, I don't claim to be knowledgeable in every aspect of the law. I try my best to make sure that justice happens in this courtroom. However, I'm going to ask Mr. Trebesch to remain present at all motions and during the trial, not as your attorney, but as an independent attorney to advise this Court if fundamental due process is not being observed by me.

So, he will have an independent right to let me know his opinion as to whether something is being done that you have not picked upon on that is fundamentally violative of due process.

You understand what I'm saying so far?

MORENO: Yes, I do.

COURT: Okay. I would at this point intend to have Mr. Trebesch sit at the same counsel table with you, but for some reason you feel that's not appropriate?

MORENO: No.

COURT: I'll have him sit in the back of the courtroom. That would be fine then. I don't believe there is anything else that we need to discuss, except Mr. Trebesch and Mr. Moreno, I would tell you that only one person—I would not expect Mr. Trebesch to be running your case for you. In other words, you're in charge of your case. So, if some evidence or question that comes in that's objectionable, if you don't object to it, he's not going to get up and object to it. You understand that? He's not going to cover your back that way. I just want him to sit in the back of the courtroom and let me know informally if there's a problem, and we'll take a recess and go into my chambers and talk about it. But you can't have—you can't get up and say I don't want that evidence coming in, I object, and I don't want him standing up and objecting. It's got to be either one of your. Since it's your case, I'll have you in charge of your own objections and the presentation of your case.

You understand that?

MORENO: Yes, I do.

COURT: Okay. Do you have any questions you want to ask at this time?

MORENO: No.

COURT: State have anything?

STATE: Your Honor, I just want for the record—to have the record indicate clearly that he understands that the Court has given him the option of being represented by an attorney, that he has a Constitutional right to be represented by an attorney, and that he is refusing to be represented by the attorney that has been appointed by the Court.

COURT: I think the reason that this has to be made clear, Mr. Moreno, is that you do have those rights, and if the trial should go adversely to you and you appeal the decision of the jury, if it's a

guilty verdict, that one of the grounds for appeal is that maybe you were not represented by counsel and you should have been.

I want you to understand that this is the time now that you're making that decision, that you can or cannot be represented by an attorney that I'm providing for you. And you're really abandoning probably that appeal or giving up that right to appeal at this point by consciously choosing not to have that attorney I've provided for you.

You understand that?

MORENO: I got to say this—well, I'm not refusing the right to a lawyer. I'm being forced a lawyer that I feel is—has—there's an interest between that firm and my case.

COURT: Uh-huh.

MORENO: I'm not refusing my right to a lawyer, and I won't say that I'm not. Simple as that.

COURT: You're entitled to a lawyer. The real question is—you always have a right to have any attorney that you want here, that you provide at your own expense, obviously.

You tell me you can't afford that, so the next thing is you have a right to a public defender appointed at County expense, and I select the Public Defender's office. Now, the only reason that I would say to you, Mr. Moreno, I will not have this man represent you and I'll appoint somebody else, who's not connected with the Public Defender's office, is if you can show me a specific reason why he can't represent you, such as a conflict, inadequacy of counsel, poor job, that he's incompetent.

Any one of these reasons would be sufficient. If you could show that to me as the fact, I would hire street counsel. But up to this moment you haven't told me anything except you feel that there's a conflict between the Public Defender's office and your case, which doesn't tell me anything.

Perhaps you'd care to elaborate a little more. If you've got good reasons and he can't represent you—and the Public Defender's office cant' represent you, then I'll appoint street counsel.

MORENO: Well, like—like I told Mr. Gerber, that I feel that firm there—and because something Mr. Terry Adams withdraws from my case, and now this man here—I feel that before, you know, when I had Terry Adams—I feel that created it itself.

COURT: That Mr. Adams—you could not work with Mr. Adams?

MORENO: Yes. I'm referring to Mr. Adams. They're all the same firm, you know.

COURT: Uh-huh.

MORENO: They're all probably in the same building. They almost—like it's like me being in my tank with all the guys that's in there, and if I know something, everybody's going to know. You know what I mean?

COURT: I'm not too sure that works that way. It may be correct, but I'm not sure at this point. Why was your previous attorney relieved, do you know?

MORENO: Yes, for the simple reason that he didn't come and see me.

STATE: Your Honor, could I elaborate on that?

COURT: Yes.

STATE: Mr. Moreno specifically requested that Mr. Adams be removed from the case. And evidently there had been, according to him, minimal communication between the two of them, and that he did not—he did not want Mr. Adams on the case. But I believe that was the sum total of his objections to Mr. Adams.

COURT: If it were to be that Mr. Trebesch was not seeing you from when we last talked last hearing, and it would not have been just refused to see you, then I could see where I would relieve him

from the case—the Public Defender's office, and appointed someone that would represent you.

You do need to have contact with your attorney. But it's a two way street. You have to want to see him. And he has to feel it's productive to see you. He can't keep coming over every minute. And I don't think you'd expect him to come over every day.

If I made a determination that Mr. Trebesch was unable or was refusing to see you on a regular basis, then I would have him off the case. At this point I don't see that. He's indicated that he's willing to come over and give the time necessary to prepare your case adequately.

However, you still want to represent yourself, is that right, and not have Mr. Trebesch represent you?

MORENO: The Public Defender's.

COURT: Public Defender's, Mr. Trebesch being one of them. All right. Well, in that case we'll proceed on under the guidelines I've given all three counsel.

I'll grant the motion—to clarify—be relieving the Public Defender's office of all further representation of Daniel A. Moreno, allowing the defendant to represent himself. Court further appoints Dean Trebesch as Amicus Curiae to the Court for all further proceedings in this matter.

Anything further, gentlemen?

STATE: No, Your Honor.

TREBESCH: Your Honor, I presume Mr. Moreno still wishes to proceed to trial on February 17th?

COURT: Is that correct, Mr. Moreno?

MORENO: Yes.

COURT: Is that a last day?

STATE: It is, Your Honor.

COURT: February 17th. That will be the trial. I don't know which division it will be, probably here. I would probably try

to keep this case here, since I'm familiar with it.

Okay, gentlemen. Before we go, are we going to need a voluntariness hearing or a suppression hearing or a Dessureault hearing?

STATE: Your Honor, we are going to need a—we'll not need a voluntariness hearing. I don't believe there are any statements made by the defendant. I believe that we'll need a Dessureault hearing, because there is a photographic lineup involved.

COURT: Are you challenging—

MORENO: Yes.

COURT: —your identification?

MORENO: Yes.

COURT: Then we'll have a Dessureault hearing. We'll have that on the morning of the trial. In other words, we'll have the Dessureault hearing in the morning, then we'll start the trial in the afternoon.

MORENO: Okay.

TASHIMA, Circuit Judge, dissenting:

I respectfully dissent.

Using the case as something of a straw man, to be set up and knocked down, the majority cites *United States v. Balough*, 820 F.2d 1485 (9th Cir.1987), only to disregard it, characterizing the case as doing nothing more than "set[ting] forth the 'preferred procedure' for a federal district court to follow" before permitting a defendant to waive his Sixth Amendment right to counsel. The *Balough* requirements, however, were clearly made a part of our habeas law in *Harding v. Lewis*, 834 F.2d 853 (9th Cir.1987).

The preferable procedure for determining whether the waiver is made knowingly and intelligently is to discuss with the defendant in open court his understanding of the charges, the possible penalties, and the dangers of self-representation. *United States v. Dujanovic*, 486 F.2d 182, 188 (9th Cir.1973). The failure to engage the defendant in such a

colloquy does not necessitate reversal, however, if the record otherwise reveals a knowing and intelligent waiver. *Cooley v. United States,* 501 F.2d 1249, 1252 (9th Cir.1974). This exception, however, should rarely be invoked. *United States v. Aponte,* 591 F.2d 1247, 1250 (9th Cir. 1978).

*Id.* at 857. Under *Harding,* the trial court was required either to follow the preferred procedure or otherwise to insure that the waiver was knowing and intelligent.[1] We have continued to apply the *Balough/Harding* requirement in state habeas cases.

The rule set forth in both *Hendricks [v. Zenon,* 993 F.2d 664 (9th Cir.1993) ] and *Balough* is that "in order to invoke the Sixth Amendment right to self representation, the request must be: (1) knowing and intelligent, and (2) unequivocal." *Hendricks,* 993 F.2d at 669. "For a waiver to be made 'knowingly and intelligently,' the petitioner must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation." *Id.* at 670.

*Snook v. Wood,* 89 F.3d 605, 613 (9th Cir.1996).

As the state court transcript appended to the majority opinion makes clear, the trial court neither followed the preferred procedure nor otherwise insured that Moreno's waiver was knowing and intelligent. No effort was made to explain the nature of the charges or to ascertain whether Moreno understood the nature of the charges he was facing. There is, similarly, no mention in the colloquy of the possible penalties Moreno faced (he was sentenced to a 36–year term of imprisonment). And, as those portions of the transcript quoted in the majority opinion demonstrate, Moreno was warned of the consequences of self-representation only in the vaguest and most general terms.[2] Moreno was not queried or informed about any of the intricacies of trying a criminal case, including voir dire and jury selection, the rules of evidence (*e.g.,* hearsay, leading questions, authentication, opinion testimony), his familiarity with obtaining compulsory process for witnesses or documents, discovery, or *Brady* rights. The record is simply barren of these matters.

This lacuna in the record is all the more troubling because it is apparent from the record that Moreno did not really want to represent himself, but wanted another attorney, other than the Public Defender, appointed to represent him. When asked on February 6, 1981, whether he "intend[ed] to represent yourself at this point or do you have another counsel?" Moreno responded: "No. I have no choice to—but to represent myself." And later in the same proceeding, Moreno reiterated his position: "I'm not refusing my right to a lawyer, and I won't say that[.] I'm not. Simple as that."

---

1. Because *Harding* is not a new rule, but the application of *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the rule first laid down in *Dujanovic* and *Cooley,* decided in the mid-70s, it presents no retroactivity problem under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Penry v. Lynaugh,* 492 U.S. 302, 314, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Moreover, we held in *Snook v. Wood,* 89 F.3d 605 (9th Cir.1996), that the application of *Balough* to a 1975 state conviction did not violate *Teague. See id.* at 612–13.

The majority also asserts that "because *Balough* is not a rule of constitutional law, it is not available to a petitioner proceeding with a habeas corpus petition." Because *Harding* is a state habeas case, however, the procedure it approved for a *Faretta* waiver was necessarily based on the Constitution and is a protection guaranteed by the Constitution, as required by *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

2. Moreno was told, for example:
   - You will be charged with the same knowledge as an attorney in this court room. I will not bend over backwards to help you if a mistake is being made.
   - I want to warn you of the consequences of representing yourself, like I told you earlier, I'm not going to give you any special favors or compensation....
   - We need to make sure that you understand-first of all, I'm sure you're aware of this, that anything you say can and will be used against you, since it's all being put down on the record.

I thus conclude that this is not one of those rare cases in which, in spite of the trial court's failure to engage in the preferred colloquy, the record nonetheless discloses that the defendant "understood [ ] the proceedings, including the possible consequences, and the dangers of acting as his own attorney." *Harding*, 834 F.2d at 857.

Respectfully, the majority has not only disregarded *Balough*, but has also ignored the teaching of *Harding, Hendricks,* and *Snook,* cases which clearly establish the minimum requirement in state habeas cases for a constitutionally acceptable *Faretta* inquiry. Because this case does not meet that minimum requirement in that the defendant's waiver was not knowingly and intelligently made, I would affirm the district court's conditional issuance of the writ.